E. GREENFIELD'S SONS, INC., Appellant, *v.* GREGOR M. FRAME et al., Copartners under the Firm Name of FRAME & COMPANY, Respondents.

Contract — sale — when within contemplation of parties that goods were sold and purchased for export — sale of goods by purchaser in domestic market — erroneous direction of verdict for defendant in action to recover amount of revenue tax required to be paid by plaintiff by reason of failure of defendant to export — failure to export a violation of contract — plaintiff entitled to recover amount paid with interest.

Plaintiff and defendant entered into a written contract for the sale and purchase of a quantity of chocolate, "packed in cases strapped for export * * * fas steamer New York. Delivery during November, 1919 * * * Terms: Net Cash against documents. Shipping Directions."

*Held,* the contract was one of purchase and sale of goods for exportation.

*Held,* the nature of the business in which the parties were engaged, the circumstances surrounding the dealings between them under the contract and the evidence adduced upon the trial, admits of but one inference; that it was the intention of plaintiff to sell and defendants to purchase the chocolate for export, Defendants having sold the chocolate for domestic consumption and plaintiff by reason thereof obliged to pay a revenue tax thereon, the direction of a verdict for defendants in an action brought by plaintiff to recover the amount of the tax paid by it was error.

*Held*, failure on the part of defendants to export the goods, and sale of same for domestic trade, was a violation of the contract on their part to the damage of plaintiff in the amount of the revenue tax paid by it and interest thereon, for which amount judgment is ordered.

*Greenfield's Sons, Inc., v. Frame*, 206 App. Div. 752, reversed.

(Argued November 23, 1923; decided December 27, 1923.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered June 29, 1923, affirming a judgment in favor of defendants entered upon a verdict directed by the court.

*Samuel J. Rawak* for appellant. The contract was one for export and defendants' duty and obligation was to export, failing which, they became liable for any damages caused by such failure. (3 Williston on Cont. 2340; 4 Page on Cont. § 2048; *Dermott* v. *State*, 99 N. Y. 109; *Booth* v. *Cleveland Mill Co.*, 74 N. Y. 15; *Grossman* v. *Shenker*, 206 N. Y. 469; *Wood* v. *Duff-Gordon*, 222 N. Y. 90; *Bencoe* v. *Christianson*, 191 App. Div. 99; 232 N. Y. 537; *Genet* v. *D. & H. C. Co.*, 136 N. Y. 609.)

*Stephen Van Wyck* for respondents. The language of the contract is unambiguous, clear and capable of but one interpretation. (*Cromwell* v. *American Bible Society*, 202 App. Div. 633; *Edison El. Ill. Co.* v. *Thatcher*, 229 N. Y. 176.)

HOGAN, J. The plaintiff in this action sought to recover from defendants the sum of $1,904 and interest from June, 1920, which amount plaintiff was required to pay to the federal government as a revenue tax upon goods sold by it to defendants as asserted for exportation, but actually sold by defendants for the domestic trade. At Trial Term at the close of the evidence presented by both parties counsel for each party moved for a direction of a verdict. The trial justice directed a verdict for defendants to which ruling an exception was duly noted. From a judgment entered upon the directed verdict dis-

missing the complaint upon the merits as matter of law an appeal was perfected to the Appellate Division where the judgment below was affirmed by a non-unanimous decision. From such determination plaintiff appealed to this court.

On September 8, 1919, a broker's sold note in the form following was executed between the parties:

> " U. S. FOOD ADMINISTRATION
> " LICENSE No. G20689 R. B. & Co.
> " *Sept. 8th,* 1919.
> " Sold for account of Messrs. E. Greenfield's Sons,
> " 95 Lorimer St., Bklyn.
> " To Messrs. FRAME & Co.,
> " 95 Wall St., N. Y.
> " Quantity — 50 long tons (packed in cases strapped for export — in ½ tb. cakes, wrapped in wax paper and labelled.)
> " Article — Chocolate
> " Quality — Sweetened
> " Price — 34¢ per tb. fas Steamer New York
> " Delivery during November 1919
> " Terms: Net cash against documents
> " Shipping Directions
> " Cartage
> " RUTGER BLEECKER & CO.
> " WOLF
> " Brokers."

A previous contract of sale and purchase of like nature was made between the same parties five days previous, viz., on September 3d, 1920. The only material difference in the two contracts being the quantity which in the sale and purchase of September 3d, was 100 tons, the price, and the time of delivery, the latter to be during October, 1919.

The Federal Revenue Act of 1918 (Title 9, section 900, subdiv. 9, 40 Stat. 1122) imposed a tax of five per

cent on the sale price of chocolate payable by the manufacturer. Section 1310(C) of the same act provides that under rules and regulations to be adopted by the commissioner of internal revenue, the tax imposed should not apply in respect to articles (chocolate) sold for export and in due course so exported. The rules and regulations adopted by the commissioner of internal revenue (Article 42) provide: " The tax does not attach to the sale of an article which is sold by the manufacturer for export and in due course so exported by the purchaser. Where a manufacturer at the time an article is sold  *  *  * has in his possession an order or contract of sale showing in writing  *  *  * that the purchaser is buying the article in order to export it prior to its being used or subjected to further manufacture, there is a presumption that the sale of the article is exempt from tax, as an export sale, and the manufacturer may for a period of six months from the date of sale or shipment rely on such presumption."

The courts below in effect held that the contract of September 8th between the parties was not a contract of sale and purchase of goods mentioned therein for the purposes of export, and such interpretation of the contract was urged by counsel for respondents upon the argument in this court. The correctness of such determination presents the fundamental question to be considered upon the present appeal. Proceeding to an interpretation of the contract of September 8th, two propositions are to be considered: (1) In the absence of an express stipulation in the contract on the part of defendants to export the goods, was it within the contemplation of the parties when the contract was executed that plaintiff was selling and defendants purchasing the goods for export? (2) Does the written contract between the parties disclose that defendants purchased the goods with the intention to export them prior to the same being used or subjected to further manufacture?

The answer to the first proposition involves an examination of the evidence contained in the record, in relation to which there was no material dispute, bearing upon the nature of the business in which the parties were engaged, the facts and circumstances surrounding the dealings between them, *prior dealings under a like contract, the facts in  connection with the dealings and  acts of the parties under the contract  in question and the business to which the same related.

Plaintiff is a manufacturer of chocolate. Defendants are exporters and as such had an agent for the sale of goods in Belgium and had sold and exported to that country a large quantity of chocolate. They had on September 3d, five days prior to the date of the contract in controversy, purchased of plaintiff under a contract practically identical in terms with the contract under review save as already pointed out, a large quantity of chocolate and exported some sixty tons to customers in Belgium. The parties exporters and manufacturer respectively not only presumptively, but actually had knowledge that chocolate sold and purchased for export and exported in due course was exempt from a revenue tax under the federal statute, while if sold and purchased for domestic consumption the tax would attach.

Under the contract of September 8th, plaintiff was obligated to make delivery of the chocolate and defendants obligated to accept delivery of the same by giving shipping instructions during November. Defendants alert to that fact had sold the chocolate in the latter part of October to a customer in Antwerp, Belgium, presumably for export not earlier than early in December after the delivery by plaintiff in November and were then in a position to order delivery of the fifty tons purchased from plaintiff for export to their customer in Antwerp. Thus far the defendants were performing the contract on their part. Their act in making sale of the property in Belgium is most cogent in support of the fact

that they purchased the goods with the intention of exporting them. Having sold the goods in Belgium the question naturally arises, why did they not export them? The answer was furnished by a witness produced by defendants upon the trial who testified upon cross-examination, in substance, as follows: On November 21 defendants received a cablegram from their customer in Belgium to whom they had sold the goods directing defendants not to export the chocolate and to sell the same for his account in New York. Pursuant to such direction, defendants sold the goods in the New York market; thereupon, as defendants were aware, the revenue tax of five per cent upon the sale price of the goods by plaintiff to defendants attached. Non-payment of the tax by defendants rendered plaintiff liable for the same and the goods not having been exported in due course it paid to the government the amount of the tax. The transaction between defendants and their customer in Belgium was unknown to plaintiff and defendants proceeded in their dealings with plaintiff along lines indicating their intention to export the goods. They realized that the goods had not yet been delivered by plaintiff and probably would not be were the facts made known to it, and it was confronted with a loss of $1,904, and they might then be confronted with litigation by the party to whom they had sold the goods in the New York market. Defendants having sold the goods for export and their customer abroad having directed them not to export the goods but to sell for his account in New York, fair dealing between plaintiff and defendants required the latter to charge to their customer abroad the amount of the revenue tax imposed upon the goods by reason of failure to export the same under his orders, then pay the tax and save plaintiff harmless therefrom. Whether or not defendants did make such charge against their foreign customer did not appear.

16

Plaintiff having contracted to deliver the goods during November not having received shipping instructions from defendants on November 25th, the time for delivery nearing expiration, plaintiff wrote defendants as follows: " Contract of September 8th fifty tons sweet chocolate for delivery Steamer New York during the month of November. Kindly note that shipment will be ready Friday, November 28th and we will await your shipping instructions." That letter asking as it did for shipping instructions, that is the marks to be placed upon the packages, and the name of the steamer to which they were to be delivered, was susceptible of but one construction, namely, that plaintiff understood he had sold the goods to defendants for export and that the same were to be exported. When defendants read that letter they were aware that they had in the first instance sold the goods in Belgium and intended to export them but that prior to the receipt of that letter they had actually sold the goods in the market in New York; that the revenue tax had attached to such sale; that they were obligated to make delivery of the goods to the purchaser to whom they had sold the same in New York and that the goods were not to be delivered alongside steamer or to be exported. They did not discuss the matter with plaintiff but reserved such information to themselves and on November 26th wrote plaintiff and requested the latter to deliver the fifty tons of chocolate purchased September 8th to the Fidelity Warehouse to be stored for their account and to present negotiable warehouse receipts for payment. If as they now contend the chocolate was not purchased for export, the inquiry is pertinent why they did not order the goods delivered directly to the party or parties to whom they had sold the same? Were they solicitous lest the plaintiff might thereby discover the transaction in which they had been engaged and refuse to deliver the goods unless the tax was paid? The circumstances surrounding the conduct

of defendants do not refute such inferences. The request made by defendants to deliver the goods to the warehouse would not tend to arouse curiosity much less suspicion on the part of plaintiff that defendants did not intend to export the chocolate. Plaintiff had theretofore complied with a request made by defendants to deliver fifty tons of the one hundred tons of chocolate purchased under a like contract of September 3d, which after delivery at the same warehouse defendants exported the goods and furnished to plaintiff evidence of such exportation. Was not plaintiff justified in a belief that defendants would adopt the same practice as to the fifty tons thus requested by them to be delivered?

On November 28th plaintiff delivered the goods as requested by defendants, procured a warehouse negotiable receipt for the same and rendered to defendants an invoice for the goods. On December 1st, plaintiff addressed a letter to defendants wherein after referring to the contract of September 8th and the invoice, the letter continued, " Herewith please find negotiable warehouse receipt No. 2978 indorsed in blank, against which we await your check. The corresponding contract called for delivery fas steamer New York, and unless you can supply bill of lading or customary affidavit before the end of December showing goods were exported, at which time we must make our monthly reports to the treasury department, it will be necessary for us to render you a separate invoice covering the 5% excise tax. This, of course, would be refunded to you should shipment be delayed until the next month." To that letter defendants never made reply, other than to forward a check for the amount of the invoice.

The only reasonable inference deducible from the foregoing narrated facts is, that it was the intention of plaintiff to sell and of defendants to purchase the chocolate for export. The direction of a verdict for defendants was, therefore, error.

(2) Does the written contract between the parties disclose that defendants purchased the goods for export with the intention to export them prior to the same being used or subjected to further manufacture? This query must be answered in the affirmative. Defendants were exporters. The contract is for fifty long tons of chocolate " packed in cases strapped for export, delivery fas steamer New York. Terms cash against documents." Why the requirement that the cases should be strapped for export unless the goods were to be exported? Goods sold for domestic use are not strapped for export. Not only were the goods to be " strapped for export " but they were to be delivered free alongside steamer, and the plaintiff could only procure payment for the same upon presentation of documents, that is, documents of the steamship company showing receipt of the goods. The contract likewise provided for " shipping directions." That is, the cases were to be marked with the name of the consignee and destination, otherwise the steamship would not receipt for the same and issue documents therefor. The name and address of the consignee would be known only to defendants and was to be furnished by them. The contract by its terms is one of sale and purchase of chocolate for export. A failure on the part of defendants to export the same and a sale of the same in the New York market for domestic trade was a violation of the contract by them which resulted in damage to plaintiff to the extent of the sum it was required to pay to the federal government as and for the revenue tax. The amount of such payment being undisputed; the judgment should be reversed and judgment directed for plaintiff against defendants for $1,904, with interest thereon from June 10, 1920, with costs in all courts.

HISCOCK, Ch. J., CARDOZO, POUND, McLAUGHLIN, CRANE and ANDREWS, JJ., concur.

Judgment accordingly.